UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RICHARD P. WILSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 3:13-cv-00633-WDS-DGW |
| v. | ) |
| | ) |
| FIRSTSOURCE ADVANTAGE, LLC a/k/a FIRSTSOURCE FINANCIAL SOLUTIONS, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| **SERVE:**  Registered Agent: CT Corporation 208 So. Lasalle St. – Ste. 814 Chicago, IL 60604 | ) |

## COMPLAINT

**COMES NOW** Plaintiff Richard P. Wilson, by and through his undersigned attorneys, and for his Complaint against Defendant Firstsource Advantage, LLC, states as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff Richard P. Wilson is, and was at relevant times, a resident of St. Louis County, Missouri and a citizen of the State of Missouri.

2. Defendant Firstsource Advantage, LLC, a/k/a Firstsource Financial Solutions, (hereinafter "Firstsource") is a corporation or other business association with its principal place of business in New York or Kentucky.

3. This Court has "federal question" jurisdiction under 28 U.S.C. §1331 as well as jurisdiction under 29 U.S.C. §2617 (a) (2) as Plaintiff brings his lawsuit under the civil enforcement section of the Family and Medical Leave Act, 29 U.S.C. §2601, *et seq.* (hereinafter "FMLA"). Venue is proper under 28 U.S.C. §1391 as Defendant corporation is subject to personal jurisdiction in this Southern District of Illinois, and the events giving rise to Plaintiff's claims occurred here.

## FACTS UNDERLYING PLAINTIFF'S CLAIMS

4. Defendant Firstsource is, and was at relevant times, a debt collector specializing in the collection of past-due accounts of hospitals and other health care providers with an office in Belleville, Illinois as well as other locations.

5. Defendant is, and was at all relevant times, an employer within the meaning of the FMLA with at least 50 employees.

6. Plaintiff Richard P. Wilson was hired by Defendant Firstsource on or about December 17, 1990 and was working as a collections supervisor in the Firstsource office in Belleville, Illinois until he was discharged on or about June 20, 2012.

7. Collections supervisors reported to the collections manager.

8. In 2011 Plaintiff applied for the position of collections manager when it became vacant, but the job was awarded to another applicant, Rick T.

9. Thereafter there were conflicts or disputes between Plaintiff and the new collection manager.

10. In late 2011 or early 2012 there were conflicts or disputes between Plaintiff and another collection supervisor by the name of Betty.

11. The problems Plaintiff experienced with Betty aggravated the problems Plaintiff experienced with the collection manager Rick T.

12. On or about February 1, 2012 there was a meeting involving Plaintiff, management personnel and a representative of Defendant's human relations department, some of whom participated by phone from New York or Kentucky.

13. It was noted during that meeting that there was obvious tension between Plaintiff and Betty which had attracted the attention of other employees, Plaintiff was criticized for not maintaining an outwardly positive attitude and in due course Plaintiff was given a final written notice.

14. At all relevant times Plaintiff suffered from a serious health condition which required professional treatment from time-to-time.

15. The serious health condition was one which could be aggravated by

stress.

16. On or about the time Plaintiff received the final written notice in February, 2012 he discussed taking an FMLA leave of absence for his own serious health condition with Defendant's H.R. personnel; but it was decided that such a leave of absence was not necessary at that time.

17. There were no significant problems between Plaintiff and any co-workers for the weeks and months following the final written notice of February, 2012 until the first week of June, 2012.

18. On or about June 5 or June 6 there was a dispute when Betty confronted Plaintiff in the presence of co-workers to complain that a collector supervised by Plaintiff had taken a seat close to a collector supervised by Betty.

19. On Friday, June 8, 2012 there was another meeting involving many of the participants in the February, 2012 meeting and Plaintiff was criticized for squabbling or bickering with Betty, although Plaintiff was told that the June incident was not cause for the termination of his employment.

20. Plaintiff was distraught or upset because he did not believe the confrontation with Betty was his fault and he was concerned that his job was threatened by events he could not control.

21. On Monday, June 11, 2012 Plaintiff did not feel well enough to report

for work; he called in sick and made an appointment to visit his healthcare provider.

22. Plaintiff met with his healthcare provider June 12, 2012 and on that date a letter from the healthcare provider to Defendant Firstsource was prepared explaining that Plaintiff needed to be absent from work due to his serious medical condition.

23. On June 14, 2012 Plaintiff completed a written request for FMLA protected leave for his serious health condition for the consecutive period of Monday, June 11 through Monday, June 18, 2012 and intermittent leave thereafter for appointments with his healthcare provider and flare-ups of his serious health condition.

24. In due course Plaintiff received a letter dated June 15, 2012 from Firstsource confirming that his request for FMLA protected leave had been approved for the week of June 11, 2012 and that he had been approved for intermittent FMLA leave thereafter for doctor appointment and flare-ups of his serious health condition.

25. Plaintiff returned to work on Tuesday, June 19, 2012.

26. On Wednesday, June 20, 2012 Plaintiff was called into a meeting with Defendant's general manager and an H.R. representative who participated by

telephone, who informed him he was discharged.

27. Plaintiff was released by his doctor and has been able to work without restrictions since approximately June 19, 2012.

28. At the time of his discharge Plaintiff was 59 years old.

## COUNT I

## FMLA Retaliation

29. There was at all relevant times at statute in effect in throughout the United States and in Illinois known as the Family and Medical Leave Act, 29 U.S.C. §2601, *et seq.* (hereinafter "FMLA").

30. The FMLA permits employees to take a leave of absence on an intermittent or reduced schedule so the employee can work and earn wages between treatments, doctor's visits or flare-ups of a serious health condition.

31. The FMLA also requires an employer to reinstate an employee to his prior position with the same compensation and benefits upon the completion of his FMLA leave.

32. It is unlawful for an employer such as Defendant to retaliate against an employee such as Plaintiff for exercising her rights under the FMLA.

33. Defendant violated the FMLA by retaliating against Plaintiff as set out above, including the decision to discharge Plaintiff from his employment on June

20, 2012 rather than reinstate him to his prior position after Plaintiff returned from approved FMLA protected leave and after he had applied for FMLA leave to be taken on an intermittent basis.

## COUNT II

### Interference with FMLA Rights

34. It also is unlawful for an employer such as Defendant to interfere with the exercise of an employee's rights to leave protected by the FMLA.

35. Defendant interfered with Plaintiff's rights under the FMLA, including his right to intermittent leave or leave or a reduced schedule following his return to work in June 19, 2012 and so violated that statute by firing him shortly after he returned from approved FMLA leave and when he had been approved for additional FMLA leave to be taken on an intermittent basis.

## DAMAGES

36. As a direct and proximate result of Defendant's conduct as set out above, Plaintiff has suffered actual damages, including lost wages, employment benefits and retirement benefits; will suffer such losses in the future; has hired attorneys; and has suffered emotional pain and distress, loss of self-esteem, inconvenience, mental anguish and loss of enjoyment of life.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Richard P. Wilson prays for judgment in his favor and against Firstsource Advantage, LLC as follows:

(a) Actual damages to compensate Plaintiff for all actual monetary losses, lost wages, compensation and benefits from the time Defendant's improper conduct commenced to the time of the award, plus all accrued interest thereon at the Illinois statutory rate other prevailing rate;

(b) Liquidated damages equal to twice the amount awarded for actual damages, plus interest;

(c) Equitable relief, including reinstatement or front pay;

(d) Reasonable attorneys' fees, costs of litigation, costs of this suit; and

(e) Such additional amount as the Jury and this Court deem just under the circumstances.

        **THE PERRON LAW FIRM, P.C.**

        */ss/ Martin L. Perron*
MARTIN L. PERRON, #06182483 (Ill.)
275 N. Lindbergh Boulevard
St. Louis, Missouri 63141-7809
(314) 993-4261
(314) 993-3367 Fax
mlp@perronlaw.com
mvp@perronlaw.com
*ATTORNEYS FOR PLAINTIFF*